2017 BNH 014      Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                  Bk. No. 17-10007-BAH
                                                                                         Chapter 7
Stephanie Pelley,
        Debtor

David Martin,
        Plaintiff

v.                                                                                       Adv. No. 17-1011-BAH

Stephanie Pelley,
        Defendant

*Eleanor Wm. Dahar, Esq.*
*Victor W. Dahar, P.A.*
*Manchester, New Hampshire*
*Attorney for Plaintiff*

*Kevin P. Chisholm, Esq.*
*Manchester, New Hampshire*
*Attorney for Debtor/Defendant*

## MEMORANDUM OPINION

### I.  INTRODUCTION

    David Martin ("Martin" or the "Plaintiff") filed a two-count complaint (Doc. No. 1) (the "Complaint") against Stephanie Pelley ("Pelley" or the "Defendant") seeking to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(5) and (a)(15).  The parties filed cross-motions for summary judgment (Doc. Nos. 23 and 24) (the "Motions"), and the Court took those Motions under advisement after a hearing.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States

District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. DISCUSSION

### A. Summary Judgment Standard

In bankruptcy, summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56 and its standards into bankruptcy practice.  Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392, 397 (B.A.P. 1st Cir. 2013) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994)); Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.  Rule 56(a) provides that a movant is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[1]  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"  Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)).  In assessing the summary judgment record, a court must draw all reasonable inferences in favor of the non-moving party but is "not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party."  Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008); see

---

[1] Rule 56 was amended in 2010; however, the standard has not changed.  Barton v. Clancy, 632 F.3d 9, 16 n.5 (1st Cir. 2011) (citing the advisory committee notes which state that "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute'"); see also Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 533 (6th Cir. 2012) ("The commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary judgment standard.").  Accordingly, case law construing the prior version of Rule 56 is still applicable.

2

Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014).  The Supreme Court has explained that "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

### B. Summary Judgment Record

The parties did not fully comply with Local Bankruptcy Rule 7056-1, which requires parties to file a separate statement of material facts supported by "specific references to the affidavits, parts of the record and other supporting materials," when they file a motion for summary judgment.  Despite these procedural inadequacies, the parties agreed at the hearing that the facts are mostly undisputed.

Martin and Pelley are parties in a parenting and child support matter pending in New Hampshire state court.  Martin and Pelley never married but do have one child together.  Pursuant to a child support order, Martin made monthly child support payments to Pelley to support their child.  Martin sought a modification of the child support order and, on October 23, 2015, the state court granted Martin's request, retroactively reducing Martin's monthly child support payment and terminating the payment effective June 1, 2014 (except for payment of any arrearage).  The New Hampshire Division of Child Support Services (the "NH DCSS") performed an audit of the parties' child support account; it was discovered that Martin had overpaid his child support to Pelley.  While the parties do not agree on the amount of this overpayment, they do agree that there was an overpayment.[2]  It is this overpayment debt that Martin seeks to except from the Pelley's discharge.

---

[2]  According to an exhibit attached to the Plaintiff's motion for summary judgment, a payment history prepared by the NH DCSS reflects an overpayment of $23,456. The Plaintiff filed a motion in state court seeking an order that would require Pelley to reimburse Martin for his overpayment of child support.  Before the state court could decide

**C. Bankruptcy Claims**

Martin initially sought to except the overpayment obligation from Pelley's bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(5) and (a)(15). In his motion for summary judgment, the Plaintiff withdrew Count II of the Complaint which sought relief under § 523(a)(15).[3] So, the Court is left to decide whether the undisputed facts outlined above support Martin's claim in Count I of the Complaint that Pelley's obligation to reimburse him for his overpayment of child support should be excepted from discharge pursuant to § 523(a)(5). The Court notes that the party seeking to except a debt from discharge bears the burden of proof and must establish each element of his claim by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 283, 291 (1991); see Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).

Section 523(a)(5) provides that "[a] discharge under section 727 … of this title does not discharge an individual debtor from any debt … for a domestic support obligation." 11 U.S.C. § 523(a)(5). Section 101(14A) of the Bankruptcy Code defines a "domestic support obligation" or "DSO" as follows:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–
>
> (A) owed to or recoverable by–
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;

---

that motion, Pelley file a chapter 7 bankruptcy petition. Thus, the summary judgment record does not contain any order from the state court that actually requires Pelley to repay Martin. Despite the absence of such an order, the parties agreed at the hearing that the Court could determine the dischargeability of this purported debt. The Court will do so (1) on the assumption that the state court would enter an order requiring repayment, and (2) without liquidating or adjudicating the amount (if any) of the debt.

[3] Martin acknowledged that § 523(a)(15) is inapplicable as the debt at issue is not a debt "to a spouse, former spouse, or child of the debtor," since the Plaintiff and the Defendant were never married.

4

>(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
>(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
>(i) a separation agreement, divorce decree, or property settlement agreement;
>(ii) an order of a court of record; or
>(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
>(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Pursuant to the parties' agreement at the hearing, the Court will assume for purposes of this decision that the debt at issue has been established by "an order of a court of record" so that § 101(14A)(C) is satisfied. It is undisputed that the debt would be "owed to or recoverable by … such child's parent" so that § 101(14A)(A) is satisfied. It is also undisputed that the debt has not been assigned to a nongovernmental unit so that § 101(14A)(D) is satisfied. The only issue to determine is whether the conditions of § 101(14A)(B) are satisfied, i.e., the debt is "in the nature of alimony, maintenance, or support of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated."

    The Plaintiff cited several cases in support of his position that his overpayment of child support should be declared non-dischargeable pursuant to § 523(a)(5). The Defendant distinguished those cases in her objection and cited an additional case to support her position that Martin's overpayment of child support is a dischargeable debt. As discussed below, the Court has identified additional cases that address the issue presented in this case.

    The Plaintiff's main argument is that because his overpayment to the Defendant stems from a state court child support order, the reimbursement obligation from the Defendant also arises from a state court support order. In other words, his claim retains the "support"

5

characteristic regardless of whether the reimbursement obligation itself is actually in the nature of support.  Martin principally relies on several decisions from Ohio to support his position.

In <u>Norbut v. Norbut (In re Norbut)</u>, 387 B.R. 199 (Bankr. S.D. Ohio 2008), the court was faced with the question of whether a former husband's overpayment of spousal support to his former wife was non-dischargeable.  The court found that it was non-dischargeable under § 523(a)(5) "under the particular circumstances" of the case, which included the fact that the Ohio state court's overpayment determination "was made after the court[] examined all of the economic and other circumstances concerning the parties," as required by state statute, and only after the state court had concluded that the overpaid funds "were intended for the [former husband's] sustenance [and] were in fact necessary for the [former husband's] support."  The <u>Norbut</u> court specifically stated that it was not determining that "a debt on account of an overpayment of a support obligation is <u>per se</u> support for purposes of § 523(a)(5)."

In her objection, the Defendant explained that the <u>Norbut</u> case involved a debtor who continued to receive alimony payments after she also began receiving retirement payments due to her former husband's early retirement, i.e., resulting in "double payments," when the intent of the parties at the time of the divorce was to stop the alimony payments once the retirement payments began.  The court concluded that the repayment of this money was non-dischargeable because the former husband needed this money as his "ability to support himself was undoubtedly negatively impacted" by his "paying the Debtor her share of the pension distributions as well as support on top of those pension distributions."  The Plaintiff in this case has not contended in either the Complaint, his motion for summary judgment, or at the hearing that he needs the overpayment money to support himself, and there is no evidence that the state court made or considered making any such determination. Thus, <u>Norbut</u> does not support the Plaintiff's position.

6

The Plaintiff also cited Kassicieh v. Mascotti, Nos. 05AP-684, 06AP-1224, 2007 WL 2800374 (Ohio Ct. App. Sept. 27, 2007), a state court case in which a retroactive reduction in child support created an overpayment of child support in the amount of approximately $28,000. The Mascotti court simply followed another Ohio case, Allen Co. Child Support Enforcement Agency v. Baker (In re Baker), 294 B.R. 281 (Bankr. N.D. Ohio 2002), in determining that the overpayment fell within the § 523(a)(5) exception to discharge, noting the former spouse was under a legal duty to make the payments at the time when they were made. The Baker case can be distinguished from the facts here because in Baker the court relied upon a state law that provides that "an overpayment of child support still retains its character as a support obligation." Baker, 294 B.R. at 287; see Mascotti, 2007 WL 28000374, at *9. Plaintiff's counsel acknowledged at the hearing that New Hampshire has no such similar statute. Thus, neither Mascotti nor Baker provide any basis for a non-dischargeability finding in this case.

The other cases cited by the Plaintiff do not contain facts similar to those in this case and are simply inapplicable. See, e.g., Leibowitz v. County of Orange (In re Leibowitz), 217 F.3d 799 (9th Cir. 2000) (involving the dischargeability of a debt owed to a county for reimbursement of public assistance provided to the debtor's children); Ting v. Chang (In re Chang), 163 F.3d 1138 (9th Cir. 1998) (holding that a debt for professional fees and expenses arising from child custody proceedings were in the nature of support and thus entitled to priority treatment in the debtor's plan); In re Etnire, 568 B.R. 60 (Bankr. C.D. Ill. 2017) (involving an objection to the priority status of a state's claim under 11 U.S.C. § 507(a)(1)(B) arising from a department of human services' overpayment of a child care subsidy to the debtor's day care provider); Hart v. Luckman (In re Luckman), Bk. No. 12-600036-13, Adv. No. 12-00013, 2012 WL 6708586 (Bankr. D. Mont. 2012) (involving an analysis of whether legal fees owed to the debtor's former spouse and his attorney were non-dischargeable support under § 523(a)(5)).

The Defendant relies on a single case from the Tenth Circuit Court of Appeals, Taylor v. Taylor, 737 F.3d 670 (10th Cir. 2013), to support her position.  In Taylor the court affirmed the underlying decisions of the bankruptcy court and the bankruptcy appellate panel, which each had determined that the debt a former wife owed to her former husband based on the husband's overpayment of spousal support was not in the nature of a support obligation within the meaning of the DSO statute and therefore could not be excepted from discharge under § 523(a)(5).  The Tenth Circuit Court of Appeals concluded that "[b]ecause [the former husband] alleged no facts to support his contention that the nature of the overpayment debt was actually for his support, the bankruptcy court did not err by dismissing his § 523(a)(5) claim."  Id. at 679.  Having decided that "the overpayment debt here does not qualify as [a] 'domestic support obligation,'" the court went on to analyze whether the repayment obligation should be excepted from discharge under § 523(a)(15).  Id.[4]

The Plaintiff did not challenge the analysis of the Taylor decision but rather acknowledged at the hearing that decisions on the issue go both ways.  The Court has found additional cases that address the issue of whether an obligation to reimburse support overpayments are DSOs within the meaning of the Bankruptcy Code.

In Galiardo v. Galiardo (In re Galiardo), 526 B.R. 897 (Bankr. M.D. Fla. 2013), the debtor's former husband overpaid his former wife $226,650 in spousal support due to the husband's inadvertent failure to notify his bookkeeper to stop making payments once the payments required by the couple's marital settlement agreement had been made in full.  The court was faced with the issue that faces this Court, i.e., whether an obligation to repay an

---

[4] The Plaintiff no longer asserts a claim under § 523(a)(15) in this proceeding, having withdrawn Count II of the Complaint as previously noted.

overpayment of support is a DSO that can be excepted from discharge pursuant to § 523(a)(5). The court explained:

> A review of cases bearing on this topic reveal that whether a debt is in the nature of support is determined by an element of need. Cases finding that debt arising from an overpayment of support may be characterized as a nondischargeable domestic support obligation have facts to support a conclusion that the judgment is, in fact, in the nature of support because of the continued need by the party to whom overpayment was to be returned. And in cases where there is not a showing of a need for support by the former spouse to whom repayment is owed, courts hold that the debt cannot be properly characterized as a domestic support obligation and is, therefore, not protected under § 523(a)(5). So when a former spouse does not establish an element of need or a disparity of incomes, courts generally hold that the judgment cannot be characterized as a domestic support obligation simply because it is the return of money that was wrongfully paid.

Id. at 899 (footnotes omitted). The court concluded that because the judgment for repayment in that case was not based on need for support of the former husband, the debt did not give rise to the DSO exception to discharge.

In In re Alewelt, 520 B.R. 704 (Bankr. C.D. Ill. 2014), the debtor's former husband filed a claim asserting his $55,577 state court judgment against the debtor for child support arrearages and maintenance overpayments was entitled to priority status as a DSO. The debtor challenged the former husband's claim of priority status for the maintenance overpayments. The court agreed with the debtor that the maintenance reimbursement claim was not entitled to priority status as a DSO in the absence of any evidence that the state court order was based on the former husband's current needs or any intent to create a support obligation for his benefit. Id. at 712.

In In re Enright, Bk. No. 15-14736-ABA, 2015 WL 4875483 (D.N.J. Aug. 13, 2015), the debtor's former husband overpaid his child support obligation by continuing to pay support for one of his children after that child became emancipated. The state court awarded him $22,792 as reimbursement of the overpaid child support. In the context of resolving a dispute over whether the former husband could return to state court to seek an order offsetting the debtor's repayment

9

obligation to him against his ongoing obligation to pay alimony to the debtor, the court noted as follows:

> In general, courts conclude that a reimbursement obligation is not a domestic support obligation ("DSO") because the reimbursement is not support to the overpaying spouse ... <u>Collier</u> states that "most courts" hold that an overpayment of a DSO from one spouse to another is not itself a DSO.

<u>Id.</u> at *3.  The court concluded that relief from the automatic stay to pursue the setoff of the support credit against the alimony obligation should not be granted.

Having considered the above-cited cases, the Court concludes that the focus should be on the true nature of the Defendant's obligation to the Plaintiff and whether it should be classified as support within the meaning of § 101(14A)(B).  <u>See</u> <u>In re Vanhook</u>, 426 B.R. 296, 302 (Bankr. N.D. Ill. 2010).  Here, the summary judgment record does not establish that Pelley's obligation is based on Martin's need for the money either to support himself or to support the parties' child; rather, any debt owed by Pelley to Martin simply arises from Martin's overpayment of child support to Pelley.  Because the Court is unable to find that the debt is "in the nature of alimony, maintenance, or support" within the meaning of § 101(14A)(B), Pelley's obligation to Martin is not a DSO.  Accordingly, no basis exists to find the debt non-dischargeable under § 523(a)(5).

While the Court acknowledges that it is unfortunate that Martin is unlikely to receive any distribution on his dischargeable debt, that result is mandated by the Bankruptcy Code and has been imposed on other creditors.  <u>See, e.g.</u>, <u>Bartos v. Kloeppner (In re Kloeppner)</u>, 460 B.R. 759 (D. Minn. 2011) (holding that $10,622 awarded to a creditor—who had paid child support to the debtor prior to a determination that he was not the father of the debtor's child—was not a DSO, but rather simply the return of money that the creditor never should have paid the debtor); <u>Vanhook</u>, 426 B.R. 296  (holding that the debtor's obligation to repay her former husband $55,000 in child support, which he had mistakenly paid for seven years in the belief that he was

10

the father of his wife's children, was not a DSO and therefore the former husband's reimbursement claim was not entitled to be paid on a priority basis).

### III.  CONCLUSION

For the reasons set forth above, the Court concludes that the Defendant's obligation to repay the Plaintiff the amount of any overpayment of child support is not a DSO that can be excepted from the Defendant's discharge pursuant to § 523(a)(5), as there is no indication in the Complaint and no evidence in the summary judgment record that Pelley's repayment obligation is a "debt … in the nature of alimony, maintenance, or support" of Martin or the parties' child within the meaning of § 101(14A)(B).  Accordingly, the Court shall enter judgment in favor of the Defendant with respect to Count I of the Complaint.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   September 26, 2017         /s/ Bruce A. Harwood
                                   Bruce A. Harwood
                                   Chief Bankruptcy Judge