2018 BNH 003        Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                          Bk. No. 17-10007-BAH
                                                                                                Chapter 7
Stephanie Pelley,
       Debtor

David Martin,
       Plaintiff/Counterclaim Defendant

v.                                                                                              Adv. No. 17-1011-BAH

Stephanie Pelley,
       Defendant/Counterclaim Plaintiff

*Eleanor Wm. Dahar, Esq.*
*Victor W. Dahar, P.A.*
*Manchester, New Hampshire*
*Attorney for Plaintiff/Counterclaim Defendant*

*Kevin P. Chisholm, Esq.*
*Manchester, New Hampshire*
*Attorney for Debtor/Defendant/Counterclaim Plaintiff*

## MEMORANDUM OPINION

### I.  INTRODUCTION

      David Martin ("Martin") and Stephanie Pelley ("Pelley") are parties in a parent and child support action that has been pending in New Hampshire state court (the "State Court") since 2011 (the "State Court Case").  Martin and Pelley have one child together; they never married.  After Pelley filed chapter 7 bankruptcy, Martin filed two motions in the State Court Case, each of which Pelley contends violated the automatic stay.  Pelley filed a counterclaim in this pending adversary proceeding seeking damages pursuant to 11 U.S.C. § 362(k)(1) (Doc. No. 9) (the

"Counterclaim"), which is the sole remaining issue before the Court.[1] The Court held a trial on the Counterclaim on February 1, 2018, and took the matter under advisement. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

Pelley filed a chapter 7 bankruptcy petition on January 4, 2017.[2] Bk. No. 17-10007-BAH, Doc. No. 1; Exs. 1 and 105. She listed Martin as a creditor on her list of creditors. Bk. No. 17-10007-BAH, Doc. No. 2; Ex. 2. Martin was served with notice of Pelley's chapter 7 bankruptcy case on January 7, 2017. Bk. No. 17-10007-BAH, Doc. Nos. 5 and 9; Ex. 106. The notice informed Martin as follows:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Bk. No. 17-10007-BAH, Doc. No. 5; Ex. 106. Martin testified that he did not read this provision,[3] although he did do some online research regarding the automatic stay.

---

[1] Martin filed a filed a two-count complaint (Doc. No. 1) (the "Complaint") against Pelley seeking to except from discharge pursuant to 11 U.S.C. § 523(a)(5) and (a)(15) Pelley's obligation to repay Martin a child support overpayment. After considering the parties' cross-motions for summary judgment (Doc. Nos. 23 and 24), the Court ruled in favor of Pelley on Count I (Doc. Nos. 31 and 33), finding that Pelley's obligation was not a domestic support obligation that could be excepted from discharge pursuant to § 523(a)(5). Prior to the Court's ruling, Martin withdrew his claim under § 523(a)(15), Count II of the Complaint (Doc. No. 32).

[2] Pelley previously filed a chapter 7 bankruptcy case in this Court on September 30, 2016. Bk. No. 16-11375-JMD, Doc. No. 1; Ex. 102. Pelley's case was dismissed effective November 14, 2016, based on her failure to file all documents required by 11 U.S.C. § 521(a)(1). Bk. No. 16-11375-JMD, Doc. No. 13; Ex. 104. A suggestion of this bankruptcy was filed in the pending State Court Case on October 16, 2016. Exs. 101 and 103. No suggestion of bankruptcy for the 2017 case was ever filed in State Court.

[3] Martin acknowledged at trial that he himself had filed bankruptcy previously. Presumably he was familiar with the protection of the automatic stay from his own case.

On January 19, 2017, without the assistance of an attorney, Martin filed a "Motion for Attorney Fees" in the State Court Case (the "Fee Motion"), noting that Pelley "recently filed for bankruptcy court [sic] in an effort to relieve herself from her responsibility to pay back an overpayment of child support." Exs. 4 and 107. Martin noted further in the Fee Motion that he was advised that he should "hire an attorney that practices both bankruptcy and family law." Exs. 4 and 107. He stated that he "should not have to hire an attorney to deal with [Pelley's] act of fraud." Exs. 4 and 107. He indicated that he could not afford an attorney and he requested that the State Court grant him "attorney fees." Exs. 4 and 107.

Also on January 19, 2017, again without the assistance of an attorney, Martin filed a "Motion to Freeze Assets" in the State Court Case ("Freeze Motion" and together with the Fee Motion, the "State Court Motions") in which he requested that the State Court "freeze" Pelley's "tax return"[4] until a hearing in March 2017 in the State Court Case. Exs. 5 and 108. Martin explained that Pelley was required by law to reimburse him for an overpayment of child support and that she had "fraudulently" filed for bankruptcy, choosing to call the overpayment "a debt" "[i]n an effort to avoid this resposib[ilit]y." Exs. 5 and 108.

Pelley's family law attorney advised Pelley that Martin had filed the State Court Motions. Upon learning of their filing, Pelley felt panicked, a feeling she normally experiences when she is informed that Martin has made yet another State Court filing. She testified at trial that she expected a reprieve once she filed bankruptcy: she thought Martin would be precluded from attempting to collect the repayment debt while she was in bankruptcy. Pelley filed objections to both the Fee Motion and the Freeze Motion, which were prepared by her family law attorney at a

---

[4] Presumably Martin meant to refer to the Debtor's anticipated "tax refund" of $6,500.00 and not to her "tax return." In her bankruptcy schedules filed with the Court on January 5, 2017, Pelley listed an "anticipated 2016 federal income tax refund" of $6,500.00 on Schedule A/B, and exempted it on Schedule C. Bk. No. 17-10007-BAH, Doc. No. 8. The Court takes judicial notice of the filed schedules.

3

total cost of $187.50.  Exs. 6, 7, and 9.  In one of the objections, Pelley noted that Martin's request violated the Bankruptcy Court's automatic stay and would "be referred to the bankruptcy court as an illegal attempt to collect a debt."  Ex. 7.  The State Court denied both motions shortly thereafter on January 24, 2017.  Exs. 6, 7, and 8.

On January 20, 2017, Martin filed this adversary proceeding seeking to except the overpayment obligation from Pelley's discharge.  On March 22, 2017, Pelley filed the Counterclaim contending that the filing of the State Court Motions on January 19, 2017, after she had filed bankruptcy, violated the automatic stay, warranting the imposition of "damages, sanctions and attorneys' fees."  The Court conducted a trial on the Counterclaim on February 1, 2018, at which Pelley and Martin testified and presented documentary evidence.

## III.  DISCUSSION

The First Circuit Bankruptcy Appellate Panel has recently written about the Bankruptcy Code's automatic stay, and the standards for obtaining relief under 11 U.S.C. § 362(k)(1), in the unpublished decision of Olsen v. Fin. Auth. of Me. (In Olsen), BAP No. EP 16-058 (B.A.P. 1st Cir. July 29, 2017):

> "The automatic stay, provided under § 362(a) of the Bankruptcy Code, is 'one of the fundamental debtor protections provided by the bankruptcy laws.'"  In re Panek, 402 B.R. 71, 75 (Bankr. D. Mass. 2009) (quoting S. Rep. No. 95-989, at 54 (1978); H.R. No. 95-595, at 340 (1977), U.S.C.C.A.N. at 5787, 5840, 5963, 6296 (1978)).  "The automatic stay 'enables debtors to resolve their debts in a more orderly fashion, and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts.'"  Id. (quoting Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)).
>
> "However, the protections afforded by the automatic stay are meaningless if they are not enforced."  Id. at 76 (citing In re Rosa, 313 B.R. 1, 6 (Bankr. D. Mass. 2004)).  Subsection 362(k)(1), which prior to the 2005 amendments to the Bankruptcy Code was codified at § 362(h), "was enacted as a tool to enforce the automatic stay and provide individual debtors with a recourse from violations."  Id.  It provides: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this

4

> section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A simple parsing of subsection (k)(1) shows that, in order to recover damages thereunder, a debtor must show: (1) that the respondent violated the automatic stay; (2) willfully; and (3) thereby injured the debtor. In re Panek, 402 B.R. at 76 (citing In re Steenstra, 280 B.R. 560, 566 (Bankr. D. Mass. 2002[)]; In re Dunn, 202 B.R. 530, 531 (Bankr. D.N.H. 1996)[)]. The standard of proof is a preponderance of the evidence. In re Panek, 402 B.R. at 76.

Olsen, at 25-26 (footnote omitted). The Court will address the three requirements of § 362(k)(1) in order.

### A. Violation of the Automatic Stay

Pelley must first establish that Martin violated an automatic stay provision of 11 U.S.C. § 362(a). Pelley did not identify in the Counterclaim which subsections of § 362(a) that Martin violated or precisely how Martin violated it. A review of the State Court Motions shows that, in the Fee Motion, Martin was asking the State Court to "grant" him attorney's fees. While the Fee Motion is not a model of clarity, it appears to the Court that Martin filed the motion with the hope that the State Court would order Pelley to pay the fees he would incur if he hired a lawyer to represent his interests in Pelley's bankruptcy case in his attempt to have Pelley pay him the amount she owed him for reimbursement of his child support overpayment. In other words, Martin was using the existing State Court Case as a means to recover a claim against Pelley that arose before the commencement of her bankruptcy case.

In the Freeze Motion, Martin explained that Pelley owed him for an overpayment of child support. He stated that Pelley was calling this "overage" a debt. He asked the State Court to "freeze" Pelley's $6,500.00 tax refund pending a State Court hearing in March. Again, while the Freeze Motion is not entirely clear, the gist of the motion is that Martin wanted the State Court to "freeze" or control Pelley's tax refund so that it could be used to pay Pelley's outstanding

5

obligation to him.  Martin testified that he was asking the State Court to set aside the money in case he could get the overpayment repaid.

      Section 362(a) provides in relevant part:

> Except as provided in subsection (b) of this section, a petition … operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> …
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> …
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1), (a)(3), and (a)(6).

      In the Court's view, the State Court Motions violated the above subsections as Martin sought to use the State Court Case to recover his prepetition claim against Pelley by (1) obtaining a lawyer, at her expense (presumably to be paid with assets of her bankruptcy estate) to assist him in getting paid either in the bankruptcy case or in the State Court Case itself; and (2) requesting that the State Court exercise control over Pelley's tax refund (property of her bankruptcy estate, which she listed and exempted on her bankruptcy schedules) for his benefit in order to recover his claim for overpayment of child support.

      At trial, Martin and his attorney argued that his actions—in filing the State Court Motions—were protected because Martin believed the debt at issue was for child support and therefore fell within an exception set forth in 11 U.S.C. § 362(b).  Section 362(b) provides in relevant part:

6

> The filing of a petition … does not operate as a stay—
>
> (2) under subsection (a)—
> (A) of the commencement or continuation of a civil action or proceeding—
> …
> (ii) for the establishment or modification of an order for domestic support obligations;
> …
> (B) of the collection of a domestic support obligation from property that is not property of the estate.

11 U.S.C. § 362(b)(2)(A)(ii) and (b)(2)(B).

Even read in a light favorable to Martin, the State Court Motions do not allege or indicate that Martin is trying to establish or modify any existing domestic support obligations or collect a domestic support obligation from property that is not property of the estate. Instead, by filing those motions, he sought to exert control over Pelley's assets, particularly the 2016 income tax refund, in order to assist him in recovering his claim against Pelley, including compelling Pelley to pay for the services of an attorney to assist him in doing so. This Court has already ruled that Pelley's obligation to repay Martin's child support overpayment is not a domestic support obligation within the meaning of 11 U.S.C. § 101(14A). Doc. No. 31. For these reasons, Martin's actions in filing the State Court Motions were not protected by § 362(b)(2)(A)(ii) or (b)(2)(B). The Court finds that Pelley has established that Martin violated the automatic stay provisions of 11 U.S.C. § 362(a).

### B. Willfulness

"Generally speaking, a violation will be found 'willful' if the creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." <u>McMullen v. Sevigny (In re McMullen)</u>, 386 F.3d 320, 330 (1st Cir. 2004). Stated differently, the standard for a "willful" violation of the automatic stay is met "if there is knowledge of the stay and the defendant intended the actions which constituted the violation." <u>Fleet Mort. Group, Inc. v. Kaneb (In re Kaneb)</u>, 196 F.3d 265, 269 (1st Cir. 1999).

7

"In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Kaneb, 196 F.3d at 269.

Here, the trial record establishes that Martin received notice of the Debtor's bankruptcy case, as notice was mailed to him at his correct address on January 7, 2017, twelve days before he filed the State Court Motions. Martin did not dispute that he received the notice. In addition, the Fee Motion and the Freeze Motion both make explicit reference to the fact that Pelley "recently filed for bankruptcy." At trial, Martin acknowledged that it was likely that he learned about Pelley's expected tax refund from Pelley's bankruptcy filing, which specifically noted that she was expecting a refund of $6,500.00; this is the amount mentioned in the Freeze Motion.

It also undisputed that Martin's filing of the State Court Motions was intentional and not inadvertent, as he took affirmative steps to draft the motions and then file them with the State Court. Accordingly, Pelley has established the willfulness requirement of § 362(k)(1).

**C. Injury**

Lastly, Pelley must prove that she was injured by Martin's willful violation of the stay. Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 404-05 (B.A.P. 1st Cir. 2004); Duby v. United States Dept. of Agriculture (In re Duby), 2010 BNH 009, at 7. The Bankruptcy Code provides that if a debtor is injured by a willful violation of the stay, the debtor "shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Courts have explained that "actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." Heghmann, 316 B.R. at 405. "A damages award cannot be based on mere speculation, guess or conjecture." Id. Instead, a debtor "needs to show the amount of damages with reasonable certainty." Id. Punitive damages are at the court's discretion. Id. Those are usually appropriate only for particularly egregious, vindictive, or intentional misconduct. Id. at 405-06.

8

In the Counterclaim, Pelley alleged that Martin's actions "caused great distress … and resulted in the expenditure of attorney's fees to respond to the motions and requests filed." Counterclaim ¶ 37. In the Counterclaim, she specifically sought the award of "damages, sanctions and attorneys' fees." At trial, Pelley testified that she should be compensated her attorney's fees for having to respond to the State Court Motions as she should not have been required to deal with filings like these while the automatic stay was in place, protecting her in bankruptcy.

The Court finds that Pelley suffered injury as a result of Martin's filings as she incurred attorney's fees in responding to the State Court Motions and in filing the Counterclaim to enforce the automatic stay. Accordingly she is entitled to her reasonable attorney's fees. At trial she submitted an invoice from her family law attorney that shows that he spent .75 hours at a rate of $250.00/hour addressing the State Court Motions. These fees are unquestionably reasonable. Pelley is therefore awarded $187.50 to reimburse her the expense of those fees. In addition, the Court will order Pelley's bankruptcy counsel to file an affidavit itemizing the fees he incurred in bringing Pelley's Counterclaim for violation of the automatic stay as these fees also represent damage to Pelley.[5]

Pelley did not demonstrate at trial that she suffered any other compensable harm as a result of Martin's State Court Motions. She did not present evidence that would establish that she suffered any emotional or psychological injury as a result of Martin's actions, other than generalized panic, which she reported she has routinely felt any time Martin has filed his dozens of motions in the State Court Case since that action began in 2011.

---

[5] The Court notes that these fees should not include any time spent defending the Complaint.

At trial, Pelley's counsel stated that Pelley was not asking for "punitive damages" but instead a "financial sanction." In the context of § 362(k)(1), a "financial sanction" would be "punitive damages" to be imposed against Martin. The Court concludes that punitive damages are not appropriate under the facts of this case. Martin's actions, while ill-advised and violative of the automatic stay, appear to be the result of his misunderstanding of the law. He noted a suggestion of bankruptcy was filed in the State Court Case after Pelley's first bankruptcy filing but not after her second. Although he contended that he thought that the filing of a suggestion of bankruptcy in the State Court was required, that contention is undermined by the fact that notice of the second bankruptcy case was mailed to Martin at his correct address almost two weeks before he filed the State Court Motions, providing him with proper and timely notice of the second bankruptcy case. He testified that he "looked up" the statute and rules, including the automatic stay, and concluded that child support issues were not covered. He further testified that it was not until he received this Court's decision on his non-dischargeability claim in the Complaint that he realized that Pelley's obligation to him was not a domestic support obligation, but instead a debt capable of being discharged. On balance, the evidence does not support a finding that Martin's conduct was so egregious or vindictive as to warrant the imposition of punitive damages.[6]

## IV. CONCLUSION

For the reasons outlined above, the Court finds in favor of Pelley on the Counterclaim. The Court shall award Pelley actual damages in the amount of $187.50 consisting of the fees

---

[6] The Court is not suggesting that ignorance of the law is a defense to a claim seeking damages, including punitive damages, for willfully violating the automatic stay; rather, under the facts of this case, Martin's actions did not rise to the level that would warrant punitive damages.

charged by her family law attorney for responding to the State Court Motions.  In addition, the Court shall award Pelley actual damages consisting of the reasonable fees charged by her bankruptcy attorney for filing and prosecuting the Counterclaim, which amount shall be determined by the Court after a review of the affidavit of fees to be submitted by Attorney Chisholm.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order and a separate judgment consistent with this opinion.

ENTERED at Concord, New Hampshire.

Date:  February 15, 2018             /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge